**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE AUTOMOBILE MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| **Plaintiff** | : | **Civil Action No. 4:11-CV-0735** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **SCOTT LUCCHESI, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently pending before the Court are Plaintiff State Automobile Mutual Insurance

Company's motion for summary judgment (Doc. No. 33), Defendant Clinton Bonson's cross-

motion for summary judgment (Doc. No. 36), and Defenant Lucchesi's cross-motion for

summary judgment (Doc. No. 40).[1]  For the reasons stated more fully herein, the Court will grant

State Auto's motion and deny Mr. Bonson's and Mr. Lucchesi's motions and enter judgment in

favor of State Auto.

## I.   BACKGROUND[2]

The above-captioned action was instituted by Plaintiff State Auto to determine its rights

and obligations pursuant to a general liability insurance policy it had issued to Defendants Scott

Lucchesi and Champs Sports Bar & Grill regarding a lawsuit filed by Defendant Bonson in the

---

[1] Defendant Klett has concurred in the cross-motion for summary judgment of Defendant Bonson, but has not filed an independent cross-motion.  (Doc. No. 45.)

[2] In reviewing a motion for summary judgment, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).  The Court notes that cross-motions for summary judgment have been filed; however, the material facts in this matter do not appear to be in dispute.  Indeed, the parties' respective statements of material fact are nearly identical.

Court of Common Pleas of Centre County, Pennsylvania, against Defendants Lucchesi, Champs, Klett, and Spencer.  (Doc. No. 33-2 ¶ 1; Doc. No. 38 ¶ 1.)  According to Mr. Bonson's complaint, on the evening of October 24, 2009, Mr. Bonson was a patron at Champs where he was served alcoholic beverages by Lucchesi, Klett, and Spencer while he was visibly intoxicated.  (Doc. No. 36-3 ¶¶ 27-29.)  Mr. Bonson further alleges that at some point in the evening of October 24, 2009, or in the early morning of October 25, 2009, Champs, acting through Lucchesi, Klett, and Spencer, permitted Mr. Bonson to leave the establishment, whereupon Mr. Bonson attempted to cross North Atherton Street, the street on which the establishment is located.  (Id. ¶¶ 30-34.) While attempting to cross the street, Mr. Bonson was struck by a car, causing him to suffer severe injuries.  (Id. ¶¶ 35-37.)  Among other things, Mr. Bonson's state court complaint alleges that Champs, Lucchesi, Klett, and Spencer, were negligent in permitting him to leave the premises while visibly intoxicated, failing to administer programs designed to identify and assist intoxicated patrons, and failing to ensure that he left the establishment with a competent individual.  (Id. ¶ 43.)

The insurance policy belonging to Champs, bearing policy number PBP 940582714, which is at issue in the present declaratory judgment action, has an effective date of May 24, 2009.  (Doc. No. 33-2 ¶ 3; Doc. No. 38 ¶ 3.)  Under the terms of the policy, State Auto agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (Doc. No. 33-2 ¶ 4; Doc. No. 38 ¶ 4.)  The policy further explains that the policy applies to bodily injury and property damage if "the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'"  (Id.)  Of particular relevance to the present case, the policy contains an

exclusion for liquor liability as follows:

> c. Liquor Liability
>
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1)     Causing or contributing to the intoxication of any person;
>
> (2)     The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3)     Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies only if you are in the         business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

(Id.)  The parties have filed cross-motions for summary judgment over the issue of whether the liquor liability exclusion relieves State Auto of the duty to defend and indemnify Lucchesi, Champs, Klett, and Spencer with respect to the claims raised against them in Mr. Bonson's state court action.

## II.     STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W., 486 F.3d at 794.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   DISCUSSION

In its motion for summary judgment, State Auto seeks a declaration that it need not

defend or indemnify Champs, Lucchesi, Klett, or Spencer in Mr. Bonson's suit against them.

Mr. Bonson's motion for summary judgment seeks a declaration that State Auto does have a

duty to defend and indemnify Champs, Lucchesi, Klett, and Spencer.  Mr. Lucchesi's cross-

motion is identical in all material respects to Mr. Bonson's cross-motion.  Because the motions

for summary judgment concern identical issues and there are no disputes of material fact, the

Court will address all three motions concurrently.

### A.    Interpretation of Insurance Contracts

The interpretation of an insurance contract is a question that is generally resolved by the

court.[3]  Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290-91 (Pa. 2007) (citations

omitted).  Insurance policies are contracts, and the interpretation of insurance policies are

governed by the rules of contract law.  Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc. (Jerry's

Sport Center II), 2 A.3d 526, 540 (Pa. 2010).  Where there is ambiguity in the policy, the

ambiguity should be resolved in favor of the insured.  Kvaerner Metals Div. of Kvaerner U.S.,

Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 893 (Pa. 2006) (reasoning that because the

contract's prime purpose is indemnification of the insured and because the insurer drafts the

policy ambiguity should be construed in favor of the insured).  Further, where "an insurer relies

on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has

asserted an affirmative defense and, accordingly, bears the burden of proving such defense."

---

[3] This matter comes before the Court on diversity jurisdiction, and all parties agree that
Pennsylvania substantive law governs the action.  Accordingly, the Court will treat the decisions
of the Pennsylvania Supreme Court as binding precedent and will treat the decisions of the
Pennsylvania Superior Court as persuasive precedent.  State Farm Fire & Cas. Co. v. Estate of
Mehlman, 589 F.3d 105, 108 n.2 (3d Cir. 2009) (citing Jewelcor Inc. v. Karfunkel, 517 F.3d 672,
676 n.4 (3d Cir. 2008)).

Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

In a declaratory judgment action brought to determine an insurer's duty to defend and indemnify, "the allegations raised in the underlying complaint alone fix the insurer's duty to defend." Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996). Whether a claim is covered by the insurance policy is determined by comparing the four corners of the policy to the four corners of the underlying complaint. Baumhammers, 938 A.2d at 290. Further, the duty to defend a claim is broader than the duty to indemnify. Kvaerner Metals, 908 A.2d at 896 n.7. Provided that the claims raised in the underlying complaint might or might not fall under the insurer's policy, the insurer has an obligation to defend the insured. Jerry's Sport Center II, 2 A.3d at 541. In addition, where multiple causes of action are raised, with only some claims potentially falling within the ambit of the insurance policy, the insurer must defend until the only claims remaining in the underlying action are excluded from the policy. Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc. (Jerry's Sport Center I), 948 A.2d 834, 846 (Pa. Super. Ct. 2008) (quoting Sclabassi v. Nationwide Mut. Fire Ins. Co., 789 A.2d 699, 703 n.2 (Pa. Super. Ct. 2001).

**B.      Application of Liquor Liability Exclusion**

The sole dispute in this matter is the scope of the liquor liability exclusion included in the insurance contract, specifically whether Mr. Bonson's claims that Champs, Lucchesi, Klett, and Spencer were negligent in permitting him to leave the premises while visibly intoxicated, failing to administer programs designed to identify and assist intoxicated patrons, and failing to ensure that he left the establishment with a competent individual are excluded from coverage pursuant

to the liquor liability exclusion.[4]  The parties do not dispute that the injury was an "occurrence" otherwise subject to coverage by the insurance contract.  Nor do the parties dispute that the liquor liability exclusion is unambiguous.  The only question before the Court is whether the clear terms of the exclusion relieves State Auto of its duty to defend and indemnify as to the claims of negligence that do not specifically refer to the furnishing of alcohol.

Defendants contend that while Mr. Bonson's state court complaint does include a number of claims based on the service of alcohol which are barred by the liquor liability exclusion, the complaint also includes claims of negligence which are not contingent on the service of alcohol. Defendants note that Mr. Bonson's complaint includes claims that Champs, Lucchesi, Klett, and Spencer were negligent in:

> f.   allowing [Bonson] to leave the premises while in a visibly intoxicated and inebriated condition;
>
> [. . .]
>
> j.   failing to establish, monitor[,] and administer programs and procedures designed to identify and assist intoxicated patrons;
>
> [. . .]
>
> p.   failing to have a policy pertaining to intoxicated persons who they knew or should have known were to attempt to cross a street in an impaired, intoxicated[,] and/or inebriated condition;
>
> [. . .]
>
> r.   failing to act reasonably with [Bonson] once they saw his visible intoxication caused him to suffer impairment of physical capability and judgment;

---

[4] All parties agree that the policy does not provide coverage for Bonson's claims based on violations of Pennsylvania's Dram Shop Act.

s.      failing to pr ovide for or arrange that [Bonson] leave their premises with competent persons who would be responsible for his safety and well being as well as others' safety and well being while he remained intoxicated;

t.      allowing [Bonson] to leave their prem ises while visibly intoxicated;

u.      failing to notify responsible persons a bout [Bonson's] condition;

v.      failing to take appropria te a ction in light of [Bonson's] condition to prevent him from injuring himself and/or others once he left the premises;

w.      failing to have reasonable procedures that were designed to assist intoxicated persons;

x.      failing to follow reasonable procedures that were designed to assist intoxicated persons; and

y.      failing to act with reasonable care under the circumstances.

(Doc. No. 1-4 ¶ 43, 48, 52, 56.)

Defendants contend that these actions do not concern the furnishing of alcohol, and as such, the liquor liability exclusion does not apply. In support of this position Defendants rely exclusively on the Pennsylvania Superior Court's decision in Penn-American Insurance v. Peccadillos. See 27 A.3d 259 (Pa. Super. Ct. 2011) (en banc), petition for allowance of appeal denied by, Penn-Am. Ins. Co. v. Peccadillos, Inc., 34 A.3d 832 (Pa. 2011). In Peccadillos, the Superior Court found that an identical liquor liability exclusion did not serve to absolve the insurer of its duty to defend, where the underlying claims were based on the insured tavern's negligence in ejecting two "brawling" and intoxicated patrons, failing to call the police to deal with the patrons, and failing to arrange for alternative transportation for the patrons when they were expelled from the tavern. Id. at 268. Although the Court acknowledges that Peccadillos is

8

similar to the present action, the Court is unpersuaded that Peccadillos requires the Court to find for Defendants.

In determining whether a liquor liability exclusion applies, the Court must look to the factual averments in the complaint and may not rely simply on the labels applied to those averments.  See State Farm Fire & Cas. Co., 589 F.3d at 116 (citing Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999); Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. Ct. 1997)).  To permit the manner in which a complaint frames the case to govern whether an exclusion applies "would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies."  Haver, 725 A.2d at 745. Accordingly, the overwhelming weight of authority dictates that when considering whether a liquor liability exclusion applies to a claim of negligence that does not specifically refer to the provision of alcohol, the reviewing court must consider whether the claims of negligence are "inextricably intertwined with the negligent provision of alcohol;" where the claims of negligence are inextricably intertwined with – or not sufficiently independent of – the provision of alcohol, the liquor liability exclusion will bar coverage.  See, e.g., Colony Ins. Co. v. Events Plus, Inc., 585 F. Supp. 2d 1148, 1154 (D. Ariz. 2008) (citing Prop. Owners Ins. Co. v. Ted's Tavern, Inc., 853 N.E. 2d 973 (Ind. Ct. App. 2006); Boudreaux v. Siarc, Inc., 714 So. 2d 49 (La. Ct. App 1998); Cusenbary v. U.S. Fid. & Guar. Co., 37 P.3d 67, 70 (Mont. 2001); Kovesdy v. Utica Fire Ins. Co., 695 N.E.2d 1165 (Ohio Ct. App. 1997)); Hamburg v. 14,000 Siblings, No. 97-7951, 1998 U.S. Dist. LEXIS 13598, 6-7 (E.D. Pa. Aug. 26, 1998) (concluding claims of negligence were not sufficiently independent of claims related to the furnishing of alcohol and holding that the liquor liability exclusion absolved the insurer of the duty to defend).

With this background in mind, the Court turns to the claims raised in Mr. Bonson's state court complaint. Mr. Bonson alleges that he went to Champs on the night of October 24, 2009, where he was served alcoholic beverages while he was visibly intoxicated. When he left Champs, still visibly intoxicated, either in the late evening of October 24, 2009, or early morning of October 25, 2009, he attempted to cross the road outside of Champs on foot and was hit by a car. Most of Mr. Bonson's claims against Champs, Lucchesi, Klett, and Spencer are premised on the theory that Bonson was served alcohol after he was heavily intoxicated. All parties agree these claims fall under the liquor liability exclusion. Defendants argue, however, that Mr. Bonson's claims regarding Champs, Lucchesi, Klett, and Spencer permitting him to leave the premises while visibly intoxicated, failing to administer programs designed to identify and assist intoxicated patrons, and failing to ensure that he left the establishment with a competent individual do not fall under the exclusion because these claims, standing alone, are not premised on the furnishing of alcohol. Indeed, Defendants argue that these same causes of action would be cognizable if Mr. Bonson had simply arrived at Champs intoxicated and had never been served alcohol at Champs prior to leaving and being hit by the car. The Court cannot agree. Under Defendants' theory of this case, any commercial enterprise – even an enterprise that does not engage in the sale or distribution of alcohol – would have a legal duty, upon seeing an intoxicated person enter, to prevent him from leaving the establishment while intoxicated. The Court can find no support in law for the finding of a duty in such circumstances, and Defendants cite none.

Instead, Defendants merely cite to Restatement sections that are wholly inapplicable to their claims. First, they cite Section 319 of the Second Restatement of Torts, which provides

that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."  Restatement (Second) of Torts § 319 (1965).  This section, however, applies only where an actor has charge of an individual, for example, an operator of a "private sanitarium for the insane."  Id. cmt. a.  Defendants fail to identify any legal precedent for the proposition that a restaurant and bar has "take[n] charge of" its patrons, as that term is understood in the Restatement, when the patrons enter the premises. Rather, Defendants argue that the danger intoxicated individuals pose justifies requiring a bar to take charge of intoxicated patrons.  This argument, however, is premised on the idea that the bar created the dangerous condition – otherwise why would the duty to watch over the individuals not apply to all businesses – and only serves to reinforce the fact that the only basis for the claims raised are the service of alcohol.

        Likewise, Defendants' reliance on Section 343 of the Restatement fails to advance their cause.  That section provides that possessors of land may be liable for harm caused by "a condition on the land."  Restatement (Second) of Torts § 343(1965).  Defendants fail to identify any recognized basis for concluding that a bar patron being hit by a car outside the bar was injured by "a condition on the land."  Again, the only basis for concluding that there is a duty under this Restatement section, to the extent one could reach this conclusion, is that the "condition on the land" was the service of alcohol.[5]  Accordingly, this argument also serves to

---

        [5] In fact, as the cases cited by Defendants in this section make clear, to the extent this provision does apply to bars it applies where an actual condition of the property, for example a defective ramp, causes an injury.  See Zito v. Merit Outlet Stores, 647 A.2d 573 (Pa. Super. Ct. 1994).

support a conclusion that the sole basis for the claims raised in the complaint against Champs, Lucchesi, Klett, and Spencer is the service of alcohol.

As a result, the Court can come to but one conclusion: the only basis for concluding that Champs, Lucchesi, Klett, and Spencer owed a duty to Mr. Bonson is as a result of having furnished him with alcohol while he was visibly intoxicated.  Accordingly, the Court must find that Mr. Bonson's claims of negligence are inextricably intertwined with his claims based on the furnishing of alcohol, and they fall under the clear and unambiguous terms of the liquor liability exclusion.  While the Court acknowledges that there is a paucity of Pennsylvania state authority to support this conclusion,[6] this finding is in accord with the nearly unanimous consensus of state and federal courts that have considered whether liquor liability exclusions apply to similarly framed claims of negligence.  See, e.g., Alea London Ltd. v. Canal Club, Inc., 231 P.3d 157, 162 (Okla. Ct. App. 2009) (concluding the liquor liability exclusion covered allegations that a bar permitted a visibly intoxicated patron to leave and collecting cases); Certain Underwriters at Lloyd's of London v. Kutchins Enters., No. 4:08-CV-143, 2008 U.S. Dist. LEXIS 103194, at *13-15 (N.D. Tex. Dec. 22, 2008) (rejecting insured's claims that allegations of negligent supervision and negligent failure to monitor could have arisen in any number of non-alcohol related contexts and concluding that the liquor liability exclusion applied because the allegations arose out of the furnishing of alcoholic beverages); S.C. Ins. Co. v. Keymon, 974 So. 2d 226, 231 (Miss. 2008) (concluding that the cause of action alleged is immaterial and concluding that the liquor liability exclusion applied to claims of negligent supervision); Preferred Nat'l Ins. v. Fat Investors, Inc., 842 So. 2d 1068, 1069 (Fla. Dist. Ct. App. 2003) (concluding that pursuant to

---

[6] There is, similarly, a paucity of any authority to support Defendants' position.

the liquor liability exclusion there could be no duty to defend claims of negligently permitting an intoxicated patron to leave the bar and where that patron was killed by a train later that night); Kovesdy v. Utica Fire Ins. Co., 695 N.E.2d 1165, 1167 (Ohio Ct. App., 1997) (concluding liquor liability covers claims that bar was negligent in permitting patron to leave the premises while intoxicated); Paradigm Ins. Co. v. Texas Richmond Corp., 942 S.W.2d 645, 651 (Tex. App. 1997) (concluding the liquor liability exclusion covered claims that parking lot attendants were negligent in not monitoring patrons leaving the tavern for levels of intoxication); Frost v. David, 673 So. 2d 340, 345 (La. Ct. App. 1996) (holding that an insurance policy with a liquor liability exclusion does not provide coverage for injuries sustained by a pedestrian who is struck by a vehicle after leaving the insured's tavern); N.H. Ins. Co. v. Hillwinds Inn, 373 A.2d 354, 355 (N.H. 1977) (concluding that liquor liability exclusion covers claims of negligently permitting intoxicated patron to leave bar).  In addition, the Court's conclusion is consistent with the federal courts that have considered the scope of liquor liability exclusions under Pennsylvania law.  See Hamburg, 1998 U.S. Dist. LEXIS 13598, at * 6-7 (holding that where negligence claims arise out of the sale of alcohol, a liquor liability exclusion will apply); Certain Underwriters & Insurers Subscribing to Lloyd's Policy No. SP93/7131 v. 6091 Frankford Ave., No. 96-4733, 1996 U.S. Dist. LEXIS 19930, at *10-11 (E.D. Pa. Jan. 16, 1996) (holding that "[t]he mere fact that the negligence claims asserted in . . . the complaint do not refer specifically to the sale of alcohol is irrelevant where the insureds only possible duty can arise from having sold alcoholic beverages").

IV.     **CONCLUSION**

Upon a review of the underlying state court complaint and the law governing liquor

liability exclusions in insurance contracts, the Court is constrained to conclude that the claims raised in Mr. Bonson's state court complaint fall squarely within the scope of the liquor liability exclusion.[7]  Although Mr. Bonson's state court complaint includes claims that do not explicitly reference the service of alcohol, the factual averments in the complaint, even when viewed in light most favorable to the Defendants, demonstrate that all the claims in the complaint regarding Champs, Lucchesi, Klett, and Spencer arise directly from the furnishing of alcohol to Mr. Bonson.  As such, the Court concludes that all claims of negligence against these Defendants are inextricably intertwined with Mr. Bonson's allegations of liability arising from the service of alcohol.  Accordingly, pursuant to the plain meaning of the liquor liability exclusion, the Court finds that State Auto is under no obligation to defend or indemnify Champs, Lucchesi, Klett, and Spencer in the state court action brought by Mr. Bonson.  The Court acknowledges the burden this places on these Defendants.  Where a party in Pennsylvania wishes to obtain insurance coverage for liability under the Dram Shop Act, however, the courts are not at liberty to ignore the clear terms of a liquor liability exclusion.  Rather, the putative insured must obtain liquor liability insurance to protect itself from such claims.  See Curbee, Ltd. v. Rhubart, 594 A.2d 733, 736 (Pa. Super. Ct. 1991).

---

[7] To the extent, Peccadillos could be read as mandating a different result, the Court concludes that the Pennsylvania Supreme Court would not adopt such a standard.  The Court further notes that one might distinguish Peccadillos on the basis that in that case the insured bar took the affirmative step of ejecting the patrons and that the ejection of the patrons created an obligation to alert the police.  Further, the Court notes that in Peccadillos the Superior Court did not actually address the issue of whether Section 319 of the Restatement imposes a duty upon tavern owners that is contrary to the Pennsylvania decisional law.  27 A.3d at 268-69.  Ultimately, however, for the reasons stated in the memorandum, to the extent Peccadillos can be read as obligating the insurer to defend in the present matter, the Court finds the decision unpersuasive in the face of the overwhelming weight of contrary authority.

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE AUTOMOBILE MUTUAL** | : | |
| **INSURANCE COMPANY,** | : | |
| **Plaintiff** | : | **Civil Action No. 4:11-CV-0735** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **SCOTT LUCCHESI, et al.,** | : | |
| **Defendants** | : | |

<u>**ORDER**</u>

**AND NOW**, on this 5th day of June 2012, **IT IS HEREBY ORDERED THAT**

Defendant Bonson's and Defendant Lucchesi's cross-motions for summary judgment (Doc. Nos.

36, 40) are **DENIED** and Plaintiff State Automobile Mutual Insurance Company's motion for

summary judgment (Doc. No. 33) is **GRANTED AS FOLLOWS**:

1. Judgment is entered in favor of Plaintiff State Auto and against Defendants;

2. The insurance policy issued by Plaintiff State Auto to Defendants Lucchesi and Champs, numbered PBP 940582714, does not provide coverage for any Defendant for any claims arising from the lawsuit instituted by Defendant Bonson in the Court of Common Pleas of Centre County, Pennsylvania, docket number 2011-616;

3. The insurance policy issued by Plaintiff State Auto to Defendants Lucchesi and Champs, numbered PBP 940582714, does not obligate Plaintiff to provide a defense to any Defendant in the lawsuit instituted by Defendant Bonson in the Court of Common Pleas of Centre County, Pennsylvania, docket number 2011-616;

4. Plaintiff State Auto has no duty to indemnify Defendants Lucchesi, Champs, Klett, and Spencer for any judgment that may be entered against them based on claims arising from the lawsuit instituted by Defendant Bonson in the Court of Common Pleas of Centre County, Pennsylvania, docket number 2011-616;

5. Plaintiff State Auto has no obligation to Defendants Lucchesi, Champs, Klett, and Spencer for any defense costs incurred in defending against the lawsuit instituted by Defendant Bonson in the Court of Common Pleas of Centre County,

15

Pennsylvania, docket number 2011-616.

The Clerk of Court is directed to close the case.

        S/ Yvette Kane
        Yvette Kane, Chief Judge
        United States District Court
        Middle District of Pennsylvania